Eli FRIEDMAN, Individually and on behalf of all Others Similarly Situated, Plaintiffs,

v.

RAYOVAC CORPORATION, Thomas H. Lee Partners, Kenneth V. Biller, Kent J. Hussey, David A. Jones, Scott A. Schoen, Stephen P. Shanesy, Thomas R. Shepherd, Randall J. Steward, Warren C. Smith, Jr. and Merrell M. Tomlin, Defendants.

Nos. 02–C–308–C, 02–C–325–C, 02–C–370–C.

United States District Court, W.D. Wisconsin.

Oct. 17, 2003.

S. Gene Cauley, for Plaintiffs.

Donald K. Schott, Quarles & Brady, Madison, WI, James R. Carroll, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, Matthew R. Kipp, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Defendants.

## OPINION and ORDER

CRABB, Chief Judge.

This is the second round of motions filed by defendants to dismiss this case, which plaintiffs brought under the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78mm. In addressing defendants' first motion to dismiss, I made several determinations. First, with respect to plaintiffs' claims under the 1933 Act, I concluded that (1) plaintiffs' claims against defendant Thomas H. Lee Partners were barred by the statute of limitations; and (2) plaintiffs had stated a claim under § 11 of the 1933 Act against defendants Rayovac Corporation, David Jones, Kent Hussey, Thomas Shepherd, Scott Schoen, Warren Smith and Randall Steward under § 12(a)(2) of the 1933 Act against all defendants except defendant Partners and under § 15 of the 1933 Act against all defendants except defendants Rayovac and Partners.

With respect to plaintiffs' claims under § 10(b) and Rule 10b–5 of the 1934 Act, I concluded that (1) in their complaint, plaintiffs had identified various statements of defendants that were allegedly false and misleading; (2) in alleging that defendants' statements were misleading because of undisclosed "channel staffing" and similar practices, plaintiffs had been sufficiently specific to meet the requirements of the Private Securities Litigation Reform Act, but they had not met those requirements with respect to their allegations regarding uncollected receivables; (3) some of the identified statements were "opinion and puffery" and therefore could not serve as the basis for liability; (4) plaintiffs had failed to allege facts attributing the allegedly false and misleading statements to individual defendants, with the exception of defendants Jones, Steward and Hussey, as required by the Reform Act; (5) plaintiffs had failed to allege facts "giving rise to a strong inference of scienter" with respect to any of the defendants, as required by the Reform Act. Finally, I concluded that because plaintiffs had failed to state a claim under § 10(b) and Rule 10b–5 of the 1934 Act, they had no viable claims under § 20(a) of the 1934 Act. I dismissed all of plaintiffs' claims under the 1934 Act without prejudice and gave plaintiffs an opportunity to file a new complaint addressing the deficiencies identified in the opinion. *See Friedman v. Rayovac Corporation,* 295 F.Supp.2d 957 (W.D.Wis.2003).

Although plaintiffs filed a second amended complaint, they did not cure the deficiencies in the first amended complaint. Because additional attempts to bolster plaintiffs' allegations would be futile, I will dismiss plaintiffs' claims under the 1934 Act with prejudice. Further, because I concluded in the May 29 opinion and order that plaintiffs' claims under the 1933 Act against defendant Partners are barred by the statute of limitations, I will dismiss defendant Partners from this case. Defendants have not asked for reconsideration of the conclusion that plaintiffs have stated a claim upon which relief may be granted under the 1933 Act against all

defendants except defendant Partners. Therefore, I need not revisit that issue in this opinion.

Most of the allegations of fact in the second amended complaint were also included in the first amended complaint. These allegations were set forth in the May 29 opinion and order and need not be repeated here.

## OPINION

■ The issue before the court is whether plaintiffs have stated a claim upon which relief may be granted with respect to their claims that defendants are liable for primary violations of § 10(b) and Rule 10b–5 of the 1934 Act and as "control persons" under § 20(a). Section 10(b) and Rule 10b–5 prohibit fraudulent acts in connection with the purchase or sale of a security. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5. The Court of Appeals for the Seventh Circuit has held that to establish liability under § 10(b) and Rule 10b–5, a plaintiff must prove that (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied and (6) that the false statement proximately caused the plaintiff's damages. *Otto v. Variable Annuity Life Insurance Co.*, 134 F.3d 841, 851 (7th Cir.1998); *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997). Although generally a complaint is legally sufficient if it provides sufficient notice to permit the defendant to file an answer, Fed.R.Civ.P. 9(b) requires plaintiffs to plead fraud with "particularity." In addition, parties bringing securities fraud claims under the 1934 Act must satisfy the pleading standards of the Private Securities Litigation Reform Act. Section 78u–4(b) requires a plaintiff to (1) identify each statement alleged to be misleading; (2) specify the reasons why the statement is misleading; and (3) "state with particulari-

ty all facts on which that belief is formed" if "an allegation regarding the statement or omission is made on information and belief." In addition, the plaintiff must allege with particularity sufficient facts allowing the drawing of a "strong inference" that the defendant acted with scienter, or an intent to deceive.

### A. Alleged False and Misleading Statements

A preliminary question is which statements identified in plaintiffs' complaint are still at issue in this case. Under 15 U.S.C. § 78u–4(b)(1), a plaintiff alleging violations of the 1934 Act must identify each statement that is false and misleading. In the May 29 opinion and order, I summarized ten alleged false and misleading statements discussed by plaintiffs in their brief in opposition to defendants' motion to dismiss. I concluded that all of the statements were sufficiently specific to satisfy § 78u–4(b)(1), with the exception of plaintiffs' allegation that documents filed with the Securities Exchange Commission in May and August 2001 "confirmed the previously announced results." Because plaintiffs did not identify *what* results the filings confirmed, the allegation was insufficient. *See In re K–tel International, Inc. Securities Litigation*, 300 F.3d 881, 890 (8th Cir.2002) (under Reform Act, complaint must identify "time, place and contents" of alleged misrepresentation).

In their second amended complaint, plaintiffs allege that the Form 10–Q filed with the SEC on May 14, 2001 (signed by defendant Steward) reported that revenue for the second fiscal quarter 2001 rose 4%. *See* Plts.' Second Am. Cpt., dkt # 47, at ¶ 45. In addition, plaintiffs allege that the August 9, 2001 Form 10–Q (also signed by defendant Steward) reported that revenue rose 6% in the third fiscal quarter 2001. This is sufficient to satisfy the first re-

quirement of § 78u–4(b)(1). Plaintiffs have now identified the time, place and contents of the alleged misrepresentation.

In addition to summarizing the ten statements discussed in plaintiffs' brief, I wrote, "In their complaint, plaintiffs identify as false or misleading several other statements made by defendants. Because plaintiffs do not discuss these statements in their brief in opposition to defendants' motion to dismiss, I conclude that they have conceded that these statements cannot form the basis of liability under the 1934 Act." May 29, 2003, Op. and Order, dkt. # 43, at 42. In a footnote in their new brief in opposition, plaintiffs deny that they made such a concession, writing, "Each such statement was addressed in the chart submitted by Plaintiffs with their opposition to Defendants' first motion to dismiss." Plts.' Br., dkt # 59, at 4 n. 4.

A review of plaintiffs' chart reveals that there is only one statement discussed in the chart that was not identified in the May 29 opinion and order. Specifically, the chart includes a statement from a May 21, 2001 press release:

Rayovac looks forward to teaming up with The Home Depot as we develop powerful solutions to grow their battery business. Being selected as a battery supplier for The Home Depot is a great honor and further legitimizes Rayovac's position as a major global battery company. . . . Rayovac's innovative packaging concepts, coupled with our consumer-appealing marketing strategy of delivering high quality products at a value price, were key factors in The Home Depot selection.

Plts.' Br., dkt. # 32, exh. 1, at 5–6 (quoting Plts.' First Am. Cpt., dkt. # 24, ¶ 52(b)).

In the column explaining why this statement was false and misleading, plaintiffs wrote:

Defendants were manipulating sales as described in ¶ 47, and Rayovac was hav-

ing problems with its distribution channel-problems that should have been disclosed and accounted for in a timely fashion. At the same time Defendants were touting the distribution relationships, several of Rayovac's biggest customers were suffering financially and had substantial uncollected accounts receivables. Those customers included, but are not limited to: Kmart, which constituted an estimated 10 percent of the Company's U.S. sales, and approximately 10 percent of receivables at June of 2001; Ames Department Stores and Phar–Mor, Inc.

*Id.*

■ Plaintiffs had a good reason not to discuss this statement in their brief: it does not provide a basis for liability. Even if plaintiffs' allegations are true, they do not show anything false or misleading about Rayovac's statement celebrating its new relationship with Home Depot. Plaintiffs do not allege that Rayovac did not establish a relationship with Home Depot or that the company's exuberance about the relationship was misleading because Home Depot was experiencing financial difficulties. Although plaintiffs have alleged that other customers of Rayovac were on the verge of bankruptcy, even if defendants knew about the other customers, this knowledge would not prohibit Rayovac from announcing new dealings with other companies or make such an announcement false or misleading. Accepting such an argument would mean that a company could not announce any good news without qualifying it with full disclosure of every problem the company is experiencing, no matter how tenuously related the problem is. Omissions make a statement false or misleading only when there is a "substantial likelihood the disclosure of the omitted fact would have been viewed by the reasonable investor as hav-

ing significantly altered the total mix of information." *Basic, Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Because there is virtually no relationship between Home Depot's choice to purchase batteries from Rayovac and plaintiffs' allegations of channel stuffing and uncollected receivables, I cannot conclude that Rayovac's announcement triggered a duty to disclose. Therefore, that statement cannot form the basis for liability under the 1934 Act.

### B. *Alleged Fraudulent Practices*

Section 78u–4(b)(1) requires plaintiffs to "specify the reasons why the statement is misleading." In addition, when allegations are made on "information and belief" or "investigation of counsel," plaintiffs must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *see also ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 351 (5th Cir.2002) (equating "investigation of counsel" with "information and belief"); *Florida State Board of Administration v. Green Tree Financial Corp.,* 270 F.3d 645, 668 (8th Cir.2001). In the first amended complaint, plaintiffs focused on two practices that made defendants' statements false and misleading: (1) failing to account for uncollected receivables from customers that would not be able to pay and (2) "channel stuffing" and similar practices. *See Greebel v. FTP, Software, Inc.,* 194 F.3d 185, 202 (1st Cir.1999) (" 'Channel stuffing' means inducing purchasers to increase substantially their purchases before they would, in the normal course, otherwise purchase products from the company. It has the result of shifting earnings into earlier quarters, quite likely to the detriment of earnings in later quarters.") In addition, plaintiffs alleged that these practices violated Generally Accepted Accounting Principles.

In the May 29 opinion and order, I concluded that plaintiffs' allegations con-

cerning uncollected receivables did not satisfy the pleading requirements of the Reform Act. In their new brief, plaintiffs contend that they have addressed the pleading deficiencies associated with these allegations. In fact, plaintiffs have done little more than reconfigure one sentence in their complaint. In their first amended complaint, plaintiffs alleged: "According to a former Rayovac employee, 'The Kmart thing, that really [angered] a lot of people [ ],' because the Kmart receivables had been outstanding well over 6 or 7 months." Plts.' First Am. Cpt., dkt. # 24, ¶ 54. Plaintiffs now allege in the second amended complaint, "According to a former Rayovac employee, the Kmart bankruptcy and mounting receivables 'really [angered] a lot of people [ ].' That stuff (the receivables) was sitting out there for well over 6 or 7 months." Plts.' Second Am. Cpt., dkt. # 47, ¶ 53. Neither allegation provides a sufficient basis for concluding that Rayovac was carrying millions of dollars of receivables from customers it knew could not pay. As defendants point out, if anything, plaintiffs' clarification that "the Kmart thing" was in fact the Kmart *bankruptcy* undermines any conclusion that defendants had ample advance warning *before* Kmart's bankruptcy in January 2002 to know that Kmart would not be able to pay its debts.

Although I found plaintiffs' allegations regarding uncollected receivables to be insufficient, I concluded that the "allegations of channel stuffing manage to scrape by, if only barely." May 29 Op. and Order, dkt. # 43, at 48. I acknowledged that plaintiffs had alleged few if any specific examples of channel stuffing, but I concluded nevertheless that "[e]ven without an itemized list of transactions, it is reasonable to infer from plaintiffs' allegations that defendants' channel stuffing was pervasive." *Id.* at 50.

I agree with defendants that I overlooked plaintiffs' complete failure to

identify *when* the alleged channel stuffing occurred. Plaintiffs have cited a number of employees who explain how severe the channel stuffing was, but have not alleged any time frame for these practices. As defendants point out, pleading fraud with particularity means identifying when the fraudulent conduct occurred. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). If the employees are not referring to conduct that occurred near the class period (before April 2001 or after September 2001), that conduct would not support an inference that any of defendants' statements were false or misleading. Because there are no particularized allegations that would suggest that defendants were engaging in channel stuffing during the class period, I must conclude that plaintiffs' allegations of channel stuffing are insufficient.

Without the allegations of channel stuffing, there is no basis for inferring that any of defendants' statements were false and misleading. Although this conclusion would require dismissal of plaintiffs' complaint by itself, because I did not identify this pleading deficiency in the May 29 opinion and order, I will address the remaining grounds for dismissal raised by defendants to determine whether plaintiffs should have an another opportunity to amend their complaint.

## C. *Defendants Who May Be Liable under the 1934 Act*

■ In plaintiffs' first amended complaint, they identified only three individuals who made the alleged false and misleading statements: defendant Steward, who signed some of the SEC filings, defendant Jones, who was quoted in press releases and participated in a conference call with analysts, and defendant Hussey, who spoke at a shareholders meeting. Plaintiffs did not identify the remaining defendants as authors of any of the statements. In their brief, plaintiffs argued that, under the group pleading doctrine, a court may presume at the pleading stage that all of the individual defendants were involved in making each of the statements because they are high-ranking officers at the company. *See* Plts.' Br., dkt. # 40, at 25. Because the Reform Act requires that false and misleading statements be set forth with particularity as to "the defendant," I concluded that "plaintiffs must allege facts suggesting *some* particularized basis for concluding that each defendant 'made' the statement at issue, such as that the defendant had drafted that type of document in the past or was generally responsible for doing so." May 29, 2003 Op. and Order, dkt. # 43, at 63. An allegation that a defendant is a high-ranking officer does not provide a particularized basis for concluding that he was involved in drafting a particular document.

■ In their new brief, plaintiffs make two interrelated arguments: (1) their second amended complaint contains sufficient allegations to permit the court to infer that each defendant made the false and misleading statements; and (2) regardless whether defendants "made" a particular statement, they can still be held liable for engaging in manipulative and deceptive acts. (In their first brief, plaintiffs argued that defendant Partners could also be held liable for making false and misleading statements; plaintiffs write now that "THL's [defendant Partners'] liability is premised upon its status as a control person of Rayovac, under § 20(a) of the 1934 Act." Plts.' Br., dkt. # 59, at 4 n. 6. Therefore, I need not consider whether plaintiffs state a claim against defendant Partners under § 10(b) of the 1934 Act.) With respect to their first argument, plaintiffs have added no new allegations to their complaint demonstrating that any individuals except defendants Steward, Jones and Hussey were involved in making any false

or misleading statements. Alleging that defendants were "hands on" managers or that they "had access to adverse non-public information" provides no particularized basis for inferring their involvement in preparing press releases.

As in their first brief, plaintiffs cite several cases holding that particularized pleading is not required for "group published" documents because it may be presumed that all corporate officers or directors are involved in drafting these. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir.1997); *In re Stratosphere Corp. Securities Litigation*, 1 F.Supp.2d 1096, 1108 (D.Nev.1998); *Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618, 626–27 (N.D.Tex.1998). (Plaintiffs also cite *Schaffer v. Evolving Systems, Inc.*, 29 F.Supp.2d 1213, 1225 (D.Colo.1998), but this case does not support their position. In *Schaffer*, each of the defendants *signed* the document, thus providing a particularized basis for inferring that each defendant was involved in drafting it. *Id.*) I adhere to my conclusion in the May 29 opinion and order that "there is tension between the particularity requirements of the Reform Act and the attribution of statements to individuals on no other basis than their position in the company." May 29 Op. and Order, dkt. # 43, at 61–62. Like other courts, I recognize that information regarding the authors of a press release may not be readily available without discovery, *see Waltree Ltd. v. Ing Furman Selz, LLC*, 97 F.Supp.2d 464, 469 n. 6 (S.D.N.Y.2000), but I do not believe that courts have the authority to read exceptions into the requirements of the Reform Act that are not part of its text.

It is revealing that the cases plaintiffs cite do not include any explanation why the particularity requirements of the Reform Act may be disregarded when a "group published" document is at issue.

As noted recently by a district court in this circuit:

> Even if the group pleading doctrine survives the PSLRA in some form, however, it is apparent that the statute requires Plaintiffs to allege facts that support an inference that the statement is attributable to individual defendants. The PSLRA obligates a plaintiff to allege specific facts as to each of the defendant's misrepresentations or omissions. 15 U.S.C. § 78u–4(b)(1). A plaintiff is therefore required at least to include allegations in the complaint relating to an individual defendant's duties or legal obligations that create a presumption that the company's statement was somehow caused by or attributable to an individual defendant. Simply alleging an individual defendant's title is not enough.

*Johnson v. Tellabs, Inc.*, 262 F.Supp.2d 937, 946–47 (N.D.Ill.2003). I agree with this conclusion that a majority of courts have adopted. *See, e.g., D.E. & J Ltd. Partnership v. Conaway*, 284 F.Supp.2d 719, 729–31 (E.D.Mich.2003); *Jones v. Intelli–Check, Inc.*, 274 F.Supp.2d 615 (D.N.J.2003); *Glaser v. Enzo Biochem, Inc.*, — F.Supp.2d ——, 2003 WL 21960613 (E.D.Va. July 16, 2003); *In re First Union Corp. Securities Litigation*, 128 F.Supp.2d 871, 888 (W.D.N.C.2001); *In re Premiere Technologies Inc. Securities Litigation*, No. 1:98–CV–1804–JOF, 2000 WL 33231639, at *11 (N.D.Ga.2000); *Marra v. Tel–Save Holdings, Inc.*, 1999 WL 317103 at *5 (E.D.Pa. May 18, 1999); *Coates v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 916 (N.D.Tex.1998); *Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350 (S.D.Cal. 1998). Plaintiffs need more than a presumption to survive a motion to dismiss under the Reform Act.

Plaintiffs' next argument is that even if all the defendants were not involved in making false and misleading statements, the allegations in the second amended complaint are sufficient to support a reasonable inference that at least defendants Biller and Tomlin were involved in manipulative and deceptive acts. Specifically, plaintiffs assert that Biller and Tomlin were involved in a "scheme" to "engag[e] in revenue and expense recognition activities that effectively masked Rayovac's actual business realities" and to "sell their shares without disclosing material information." Plts.' Br., dkt. # 59, at 8–9.

Plaintiffs are correct that § 10(b) of the 1934 Act and Rule 10b–5 are not limited to false and misleading *statements*. Section 10b prohibits "any manipulative or deceptive device or contrivance" and Rule 10b–5 prohibits "any device, scheme, or artifice to defraud." Although an individual may be liable under the 1934 Act for fraudulent acts other than statements, as a practical matter, it is difficult to imagine many situations in which one could defraud another without saying *something;* deception generally involves communication.

Even many of the cases cited by plaintiffs in support of this argument involved statements. *See Cooper v. Pickett,* 137 F.3d 616 (9th Cir.1997); *Lawton v. Nyman,* 62 F.Supp.2d 533 (D.R.I.1999); *In re Kendall Square Research Corp. Securities Litigation,* 868 F.Supp. 26 (D.Mass.1994). Plaintiffs do cite three cases in which the manipulative act was the buying and selling of stock. *See SEC v. United States Environmental, Inc.,* 155 F.3d 107 (2d Cir. 1998); *T.H.C., Inc. v. Fortune Petroleum Corp.,* 1999 WL 182593, 1999 U.S. Dist. Lexis 4039 (S.D.N.Y. March 31, 1999); *In re Blech Securities Litigation,* 961 F.Supp. 569 (S.D.N.Y.1997). However, in these cases, the defendants were engaging in sham transactions with the purpose of creating the appearance of heavy trading, which would suggest that the stock was worth more than it was. Thus, the stock sales themselves were "manipulative" and "deceptive" acts in that they communicated to the public an artificially high demand for the stock.

■ In this case, however, defendants' sales were not designed to communicate anything. According to plaintiffs' allegations, defendants sold their stock because they believed it was overvalued and wanted to dump it before the stock's true worth became known. Insider sales of large amounts of stock would not convey an impression that a stock is worth more than its market value. Plaintiffs cannot argue plausibly that, when they purchased their stock, they were misled by defendants' sales into believing that the stock was worth the price they paid for it or more. *See Otto,* 134 F.3d at 851 (reliance is element of brought by private litigant under § 10(b) and Rule 10b–5). If anything, defendants' sales of stock would have been a clue to potential shareholders that they should *not* make a purchase at that time.

■ Further, although plaintiffs suggest otherwise in their brief, the "scheme" they alleged in their complaint was not to engage in channel stuffing or sell stock, but to artificially inflate the price of stock. Plaintiffs allege that defendants accomplished this by feeding the public false and misleading information about Rayovac's sales growth and the health of its distribution channels. By itself, pulling sales forward is not inherently fraudulent or even improper. *See Greebel,* 194 F.3d at 202 ("There is nothing inherently improper in pressing for sales to be made earlier than in the normal course."). Thus, the channel stuffing could be part of a "deceptive act" only if a defendant were failing to comply with a duty to disclose that practice. However, as I noted in the May 29 opinion and order, § 10(b) and Rule 10b–5 do not

impose a duty to disclose material information unless failing to do so alters a statement that *was* made. *See McDonald v. Kinder–Morgan, Inc.,* 287 F.3d 992 (10th Cir.2002); *see also Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) (mere possession of confidential inside information is not sufficient to trigger duty to disclose); *Williams v. Dresser Industries,* 120 F.3d 1163, 1173 (11th Cir.1997). This brings us full circle. Unless defendants made public statements that would be misleading in the absence of disclosure, they would not be required to reveal any of the company's sales practices. Because plaintiffs have failed to allege particularized facts showing that any defendants except Rayovac, Jones, Hussey and Steward made false or misleading statements or otherwise engaged in manipulative and deceptive acts, plaintiffs claims against the remaining defendants under § 10(b) and Rule 10b–5 must be dismissed.

### D. *Scienter*

The Reform Act requires plaintiffs in a securities fraud case to "state with particularity facts giving rise to a strong inference of scienter." 15 U.S.C § 78u–4(b)(2). Further, there is no liability for "forward looking statements" under 15 U.S.C. § 78u–5(c)(1) unless the plaintiff proves that the statement was made "with actual knowledge" that it was false or misleading. In their first amended complaint, plaintiffs included three types of allegations to support an inference of scienter: (1) defendants sold a substantial number of shares three months before announcing that Rayovac's fourth quarter results would be disappointing; (2) because defendants were high-ranking officers, it could be presumed that they knew about the improper sales practices; (3) defendant Jones directed management to exert pressure on salespeople to increase their sales forecasts and sell more product.

In the May 29 opinion and order, I concluded that I could not presume from defendants' job titles that they knew they made false and misleading statements or recklessly disregarded the truth. *See SEC v. Jakubowski,* 150 F.3d 675, 681 (7th Cir. 1998) ("scienter" requires an "intent to deceive," which includes "a reckless disregard for the truth"). In addition, I held that allegations of sales pressure were insufficient by themselves to create a strong implication of scienter. Finally, with respect to plaintiffs' allegations of insider trading, I agreed with plaintiffs that, in some instances, selling large quantities of stock could give rise to a strong implication of scienter. Further, I noted that courts have looked at several factors in determining whether selling stock is suspicious: (1) whether those who engaged in insider trading are the same as those alleged to have made fraudulent statements; (2) how much and what percentage of the defendant's shares of stock were traded; (3) the timing of the trading; and (4) whether the trading was consistent with the defendant's previous practices. *In re Scholastic Corp. Securities Litigation,* 252 F.3d 63, 74–75 (2d Cir.2001); *In re Silicon Graphics, Inc. Securities Litigation,* 183 F.3d 970, 986 (9th Cir.1999). Although plaintiffs had alleged that defendants sold large quantities of stock three months before the "bad news" was announced, they had failed to allege how much stock defendants had retained or whether their trading activity was unusual for them. Therefore, I concluded that plaintiffs' allegations were insufficient.

In their second amended complaint, plaintiffs have added the allegations that (1) defendant Jones sold 52% of his stock and defendant Hussey sold 36% of his stock in the secondary offering; (2) neither defendant Jones nor Hussey sold any stock in the two-year period before the secondary offering; (3) Jones and Hussey

were directly involved in making sales forecasts and in monitoring sales on a weekly and monthly basis; (4) regional sales managers communicated to Jones as part of the "Make the Quarter" program; (5) Rayovac increased its shares by 50% in the secondary offering and retired $65 million in debt. (Plaintiffs also added allegations regarding defendants Shepherd, Biller and Tomlin. However, I have concluded that plaintiffs' allegations fail to show that any of these defendants made false or misleading statements or were otherwise involved in a manipulative or deceptive scheme. Therefore, it is unnecessary to consider whether their stock sales are suspicious.)

Defendants do not deny that sales of one-third to more than one-half of an officer's stock could give rise to a strong implication of scienter in some cases. However, they argue that no such inference may be drawn in this case when plaintiffs' allegations are viewed in context of other facts available in public records. Defendants provide several reasons why Jones's and Hussey's stock sales do not give rise to a strong implication of scienter: (1) a contract with defendant Partners restricted their ability to sell stock unless defendant Partners was also selling; (2) most of the stock Jones and Hussey sold took the form of exercised stock options; (3) their sales were part of a planned secondary offering; (4) sales by Jones and Hussey in the 2001 offering were consistent with their sales in previous offerings; (5) both Jones and Hussey retained significant amounts of stock after the 2001 offering; (6) they did not sell their stock when the stock price was at its peak; and (7) their sales took place three months before Rayovac announced its disappointing fourth quarter results.

In their complaint, plaintiffs did not refer to a contract restricting defendants' ability to sell their stock. However, defendants have included a copy of the agreement in an appendix to their motion to dismiss. Dfts.' Appx., dkt. # 54, exh. 1. Defendants argue that this court can consider the agreement even though it is not part of the pleadings because it is "publicly available" on the SEC's website and was filed as an exhibit to numerous reports Rayovac filed with the SEC. Dfts.' Br., dkt. # 53, at 10 n. 5. Plaintiffs disagree, arguing that the court's consideration of the agreement is limited to determining what it says rather than to prove the truth of its contents. Plts.' Br., dkt. # 59, at 9 (citing *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996)).

■■■ Generally, a court cannot consider documents outside the pleadings in deciding a motion to dismiss; such documents do not become fair game unless they are attached to or at least referred to the complaint. *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir.2002). However, there is an exception to this rule: a court may consider "documents contained in the public record" without converting the motion into one for summary judgment. *Menominee Indian Tribe of Wisconsin v. Thompson,* 161 F.3d 449, 456 (7th Cir.1998). Plaintiffs are correct that I may not rely on the contents of the contract to resolve a factual dispute. *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354–55 (7th Cir.1995) (district court was correct in declining to take judicial notice of 10–K form for purpose of determining number of defendant's employees). However, I may take judicial notice of the contract's existence and its terms.

Defendants point to § 2.1 of the agreement, which provides:

Restrictions on Transfers. No Shareholder may Transfer all or any part of the Shares owned by such Shareholder other than a Transfer of Shares which is (i) a Permitted Transfer, (ii) pursuant to

a Public Offering, (iii) for any Lee Group Shareholder or Management Shareholder, made after a Public Offering, pursuant to a Rule 144 Transaction; provided that no Management Shareholder shall Transfer, pursuant to any Rule 144 Transaction, an aggregate number of Shares that, together with all prior Transfers by such Management Shareholders pursuant to one or more Rule 144 Transactions and Public Offerings, represents more than (A) the aggregate number of Shares Transferred by the Lee Group Shareholders other than pursuant to a Permitted Transfer multiplied by (B) such Management Shareholders' Proportionate Equity Interest, (iv) for any Non–Management Shareholder, made after a Public Offering, (v) a Transfer by a Management Shareholder to another Management Shareholder (a "Management Transfer"); provided that each Management Transfer shall be made in accordance with the procedures set forth in Sections 2.1(a)-(f), or (vi) pursuant to another section of this Article II. For purposes of this Section 2.1, "Proportionate Equity Interest" shall mean the number of Shares set forth on the Schedule opposite the Management Shareholder's name plus the number of Shares underlying options granted to such Management Shareholder on the date hereof (to the extent exercisable) divided by the aggregate number of Shares set forth on the Schedule opposite the names of the Lee Group Shareholders, in each case as equitably adjusted to account for stock dividends, stock splits, reverse stock splits or other similar reclassifications.

I agree with defendants that the contract undermines plaintiffs' allegations regarding defendants' intent to deceive. It demonstrates that Jones and Hussey could not sell their stock in any quantity they chose or at any time they wanted. It is true that the agreement does not prohibit defen-dants from selling their stock in all circumstances or only when there is a public offering. Rather, it "limits the amount of stock they might sell based upon their prior sales as a percentage of total holdings in comparison with [defendant Partners'] prior sales as a percentage of its total holdings." Dfts.' Br., dkt. # 53, at 10 n. 6. Although defendants do not point to any information in the public record or elsewhere showing Partners' sales patterns in the two years preceding the secondary offering, plaintiffs have provided documents showing that Partners did not sell any stock in 1999 and 2000, which suggests that Jones's and Hussey's ability to sell was greatly restricted during those years. See Plts.' Br., dkt. # 59, exh. 1.

Perhaps even more supportive of defendants' position are plaintiffs' own allegations that defendants Jones and Hussey also sold large quantities of stock in the 1998 offering and that defendants' sales in 2001 were consistent with their practice of limiting their stock sales to public offerings. See Plts.' Second Am. Cpt., dkt. # 47, ¶¶ 33, 120; see also id. at 66 (chart showing that defendants Jones and Hussey sold large amounts of stock in the 1998 offering). Although plaintiffs do allege that Jones and Hussey sold more stock in the 2001 offering than they did in the 1998 offering, they also allege that Jones and Hussey *retained* a very substantial amount of stock after the 2001 offering.

█ Some of defendants' other arguments would not be persuasive if plaintiffs could otherwise allege facts showing that Jones's and Hussey's 2001 sales "were dramatically out of line with their prior trading activities." *Broudo v. Dura Pharmaceuticals, Inc.,* 339 F.3d 933, 940 (9th Cir. 2003). For example, three months between the sales and the announcement is not such a long time as to defeat an implication of scienter. Few corporate officers

would be so foolish as to dump their stock the day before they announce bad news. However, considering that defendants were restricted in their ability to sell stock in 1999 and 2000, that they sold large amounts of stock in the previous public offering and that they generally limited their sales to public offerings, I cannot conclude that the sale of 36% of Hussey's stock or 52% of Jones's stock gives rise to the strong implication of scienter required by the Reform Act. Although it is *possible* that defendants were motivated to sell their stock because they knew there were dark clouds on the horizon, the facts alleged in the complaint do not sufficiently rule out innocent possibilities when considered in the context of the facts available in the public record. It is true that a court must draw all reasonable inferences in favor of the plaintiffs when deciding a motion to dismiss, *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir.2002), but the Reform Act requires more than a *reasonable* inference; the inference must be a "strong" one. *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1188 (10th Cir.2003) ("If a plaintiff pleads facts with particularity that, in the overall context of the pleadings, *including potentially negative inferences*, give rise to a strong implication of scienter, the scienter requirement of the Reform Act is satisfied.") (Emphasis added). Congress has imposed a demanding standard on those bringing a securities fraud claim under the 1934 Act. Plaintiffs' allegations of insider trading fail to meet it.

Plaintiffs' remaining additional allegations are likewise unavailing. First, plaintiffs provide no factual basis for their conclusion that Jones and Hussey were "directly and intimately involved" in making and monitoring sales forecasts other than to refer again to defendants' "executive and managerial positions." Plts.' Second Am. Cpt., dkt. # 47, at ¶ 19. As I noted in the May 29 opinion and order, plaintiffs may not rely on defendants' positions alone. *See No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 938 (9th Cir.2003) ("Each allegation [of scienter] should be supported by particularized facts and corroborating details.") Furthermore, the fact that Jones or Hussy were involved in making sales forecasts or "communicated with Rayovac's Regional Sales Managers" is insufficient. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003) (strong inference of scienter could not be drawn from allegations that those with knowledge of improper sales practices reported to defendants). Finally, with respect to plaintiffs' allegation that Rayovac used the public offering to reduce its debt, this reveals little except that the company was interested in making money. Although this would provide defendants with a motive to lie, it is a motive that all businesses share. As discussed in the May 29 opinion and order, allegations of motive and opportunity are not always sufficient. *See Green Tree*, 270 F.3d at 660 (motive and opportunity allegations "may meet the Reform Act standard, but if so it is because they give rise to a strong inference of scienter, not merely because they establish motive and opportunity"). Plaintiffs must allege facts showing that the circumstances surrounding the sales were suspicious. Plaintiffs have failed to do this. Because plaintiffs' allegations fail to give rise to a strong implication of scienter with respect to any of the defendants, plaintiffs' claims under § 10(b) and Rule 10b–5 of the 1934 Act must be dismissed.

#### E. *Liability under § 20(a)*

Section 20(a) of the 1934 Act imposes liability on anyone "who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule

or regulation thereunder." 15 U.S.C. § 78t(a). Because I have concluded that plaintiffs failed to state a claim under § 10(b) or Rule 10b–5, there can be no liability under § 20(a). Accordingly, these claims must be dismissed as well.

### F. *Dismissal with or without Prejudice*

The only remaining question is whether plaintiffs should be allowed another opportunity to amend their complaint to cure its deficiencies. Fed. R. Civ. P 15(a) provides that leave to amend a complaint should be granted "when justice so requires." However, a court may withhold permission to amend a complaint when doing so would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In the May 29 opinion and order, I instructed plaintiffs on the requirements for pleading scienter and for group pleading. It appears that in their second amended complaint, plaintiffs have alleged everything they can to show that each of the defendants were involved in manipulative and deceptive acts, but they have still failed to meet the requirements of the Reform Act. Attempting another round of amendments would not be a wise or efficient use of the parties' or this court's resources. *See In re Read–Rite Corp.,* 335 F.3d 843, 845 (9th Cir.2003) (quoting *In re Vantive Corp. Securities Litigation,* 283 F.3d 1079, 1097–98 (9th Cir.2002))(" 'The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.' "). Plaintiffs have not suggested that they have access to additional facts that could strengthen their allegations. *See In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1332 (3d Cir.2002) (Leave to amend futile when plaintiffs made no representation that they had new information that would cure pleading deficiencies). Therefore, I will dismiss all of plaintiffs' claims under the 1934 Act with prejudice. Because these were the only claims remaining against

defendant Partners, I will dismiss Partners from the case. The case will proceed against the remaining defendants on plaintiffs' claims under the 1933 Act.

### ORDER

IT IS ORDERED that

1. The motion to dismiss plaintiffs' claims under the Securities Exchange Act of 1934 filed by defendants Rayovac Corporation, Kenneth V. Biller, Kent J. Hussey, David A. Jones, Scott A. Schoen, Stephen P. Shanesy, Thomas R. Shepherd, Randall J. Steward, Warren C. Smith, Jr. and Merrell Tomlin is GRANTED.

2. The motion to dismiss filed by defendant Thomas H. Lee Partners is GRANTED and defendant Partners is DISMISSED from this case.