Oscar LEVIAS, Plaintiff(s)

v.

TEXAS DEPT. OF CRIMINAL JUSTICE, Defendant(s)

No. CIV.A.H–02–4142.

United States District Court,
S.D. Texas,
Houston Division.

April 15, 2004.

Jo Ann Miller, Law Office of Jo Miller, Conroe, TX, for Plaintiff.

Karen D. Matlock, Office of Attorney General, Austin, TX, for Defendant.

### MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court are Defendant's motion for leave to file a motion for summary judgment (Doc. 31) and motion for summary judgment (Doc. 32). Defendant's motion for leave is **GRANTED**. For the reasons set forth below, Defen-

dant's motion for summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART**.

## I. BACKGROUND AND RELEVANT FACTS

This is a Title VII failure to promote and retaliation case. Plaintiff Oscar Levias ("Levias"), an African–American male, began working for Defendant Texas Department of Criminal Justice ("TDCJ") in 1982. In 1994 Levias applied for and received a promotion to an Industrial Specialist III position in the Texas Correctional Industries ("TCI") division of TDCJ. By way of background, TCI operates approximately 40 factories within the TDCJ prison system and employs approximately 600 civilians and 6000 inmates.[1] Since his 1994 promotion, which was his last promotion at TDCJ, Levias has worked at TCI's Wynne Box Factory (the "Box Factory"). Levias asserts that from early 1998 until November 2000 he worked as the *de facto* Assistant Plant Manager of the Factory, performing the duties of an Assistant Plant Manager (*i.e.*, above and beyond the duties of his lower pay grade Industrial Specialist III position) without commensurate pay and benefits.[2] Levias further asserts, without opposition, that during that time period every other TCI factory actually had a formally employed Assistant Manager.[3] On October 28, 1999, the Manager of the Box Factory, Greg Irving ("Irving"),

an African–American male, prepared a Decision Memorandum requesting that Levias be promoted to Assistant Plant Manager.[4] Irving also asserts that Levias would act as *de facto* Plant Manager when he was absent and that he "attempted, on several occasions," to get Levias "either an upgrade to assistant plant manager or an upgrade in pay status."[5]

Irving's Decision Memorandum was sent to, *inter alia*, Tony D'Cunha ("D'Cunha") and John Benestante ("Benestante"). D'Cunha was TCI's Operations Manager and later its Assistant Director. Benestante was TCI's Assistant Director and later its Director. The parties do not dispute that at all relevant times Benestante was the highest-ranking official in TCI.[6] Levias initially did "not dispute John Benestante's assertion that he did not know Plaintiff or Plaintiff's race prior to May or June of 2001."[7] Recently, however, Levias informed the Court that he now asserts that he had "ongoing face to face contact" with Benestante since at least 1996.[8] Levias also specified that he has had similar contact with D'Cunha since at least 1999.[9] These issues, which given the current record before the Court will turn on the credibility of the witnesses in this case, are contested issues of fact for the jury. In any case, Irving's request (in the October 1999 Decision Memorandum) that Levias be promoted to Assistant Plant Manager was denied. Subsequently, in November

---

1. *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 3

2. *Plaintiff's Original Complaint* (Doc. 1) ¶ 15.

3. *Id.* ¶ 19.

4. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 9.

5. *Id.* Ex. 21.

6. *Id.* at p. 3 ¶ 4; but see *Joint Pretrial Order* p. 10 ¶ 20, p. 11 ¶ L. The parties should clarify

whether this issue is actually in dispute prior to trial.

7. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) at p. 3 ¶ 5.

8. *Plaintiff's Reply to TDCJ's Reply to Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment* at p. 5.

9. *Id.*

2000, D'Cunha recommended and Benestante agreed to "administratively reassign" Danny Ticknor ("Ticknor") to serve as Assistant Plant Manager of the Wynne Box Factory. At the time of his reassignment Ticknor, a white male, was the Assistant Plant Manager of the Wynne Sign and Plastics Factory (the "Sign Factory") and, like Levias, had been employed by TDCJ for approximately 18 years. There is no dispute that during Ticknor's tenure the Sign and Plastics Factory "was mismanaged" due to "some problems which Ticknor and the Sign Factory Plant Manager Ronnie Cannon had with operations." [10] There is also no dispute that when the decision to "administratively reassign" Ticknor to the Box Factory as Assistant Plant Manager was made D'Cunha (1) was aware that Levias had previously sought the position, (2) was aware that Levias still wanted the position, and (3) was aware that Irving, the Box Factory Manager, thought Levias should be promoted to the position. [11] TDCJ provided the following explanation: "While Benestante could have brought formal disciplinary charges against either Ticknor or Cannon, he chose not to because both were long-term employees without any recent disciplinary infractions. In that type [of] situation, it is Benestante's philosophy to try to find new areas of responsibility for employees which will better fit their talent and experience." [12] Ticknor's "reassignment" left a void in the Assistant Plant Manager position at the Sign Factory, which D'Cunha and Benestante subsequently filled by promoting someone within the factory. [13]

The second employment decision relevant to this case concerns the appointment of Alan Albright to the position of Plant Manager of the Box Factory. In April 2001 Benestante reassigned Irving from his position of Plant Manager of the Box Factory to a position on TCI's Quality Assurance Review team ("QAR"). Contemporaneously, and without advertising the position, Benestante assigned Alan Albright, a white male, to Irving's former position. [14] Prior to this assignment, Albright had spent four years as Plant Manager of another TCI factory and had worked for several months on the QAR. Feeling that he was qualified for and should have been promoted to Irving's position, Levias filed an internal grievance with TDCJ on or about May 2, 2001. [15] Subsequently, in June 2001, Levias filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), naming Benestante, D'Cunha, and the TDCJ as respondents. [16] In his complaint Levias pointed to both the Ticknor and Albright assignments as instances of discriminatory failures to promote him. Subsequently, in January 2002, Ticknor retired and an opening for the Assistant Plant Manager position at the Factory was posted. Levias submitted an application for the position

**10.** *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 15–18 (Q: "And what was going on at the sign shop?" / A: "It was pretty chaotic. It was mismanaged."); *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 16.

**11.** *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at p. 18.

**12.** *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 16.

**13.** *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 17–18 & Ex. 26 (EEOC Determination dated 02/08/2002).

**14.** *Defendant's Motion for Summary Judgment* (Doc. 32) at pp. 11–12.

**15.** *Plaintiff's Complaint* (Doc. 1) ¶ 30.

**16.** See *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 26.

and was interviewed during the hiring process by Henry Spikes ("Spikes"), whom Defendants inform the Court is an African–American.[17] In February 2002 the third and final employment decision relevant to this case occurred when the Assistant Plant Manager position was awarded to James McDaniel, a white male.

There is no dispute that D'Cunha was the selecting authority for all employees at TCI,[18] and that in particular he was the official selecting authority with respect to the hiring of McDaniel.[19] Nevertheless, D'Cunha has stated that, because Levias "had filed a charge of race discrimination for him not being selected as Plant Manager of the Box Factory," he "asked Mr. Henry Spikes to make the selection" of who should replace Ticknor.[20] Thus, while there is no dispute that D'Cunha was the official decision maker, the parties appear to dispute whether D'Cunha or Spikes actually made the decision to hire McDaniel and not Levias. There is no dispute, however, that (1) by the time Ticknor retired and the Assistant Plant Manager position came open both D'Cunha and Benestante were aware that Levias had filed an EEOC complaint naming them as respondents and that an EEOC investigation had begun;[21] and (2) prior to the applicants' interviews D'Cunha talked to Spikes about Levias's having filed the EEOC charge.[22]

On February 8, 2002, the EEOC investigator issued his determination with respect to Levias's first charge of discrimination. The investigator concluded that:

> Examination of the evidence reveals that Charging Party has been employed with the Department since February 1, 1982, and that Charging Party has functioned as the Assistant Plant Manager-without the pay or title-for the past 3 years. The investigation revealed evidence that for several years Charging Party's supervisor made requests that Charging Party be granted a promotion based on his performance, duties and responsibilities. Respondent's officials were aware of the request of Charging Party's supervisor, but routinely denied his request to provide Charging Party with any promotion. Respondent's position was that Charging Party was never denied a promotion because the position in question was filled by an employee who received a lateral transfer. Based on the evidence, Respondent laterally transferred an Assistant Plant Manager from the Signs and Plastics facility, which created a void in the area for an Assistant Plant Manager. Respondent then promoted an employee to the position of Assistant Plant Manager in the Signs and Plastics Factory. The effect and purpose of these personnel decisions was to discriminate against Charging Party because of his race.
>
> Finally, the Commission's interviews with management officials regarding Charging Party's allegations contained several inconsistencies. Respondent failed to provide Charging Party with the opportunity to be promoted, even though it was fully aware of not only his desire to perform in the position [but also of] the fact that for several years he

17. *Defendant's Motion for Summary Judgment* (Doc. 32) at pp. 3, 8, Ex. 4; *Defendant's Reply to Plaintiff's Response* (Doc. 47) at p. 16.

18. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 p. 38, 70 & Ex. 10.

19. *Id.* at Ex. 12.

20. *Id.* at Ex. 10.

21. *Id.* at Ex. 5 (D'Cunha Deposition) p. 35; Ex. 26 p. 2000440–42 (statements by Benestante and D'Cunha in response to Levias's EEOC charge).

22. *Id.*

functioned as the *de facto* Assistant Plant Manager.

Based on the weight of the evidence, the Commission concludes that Respondent is in violation of the Civil Rights Act of 1964, as amended, by denying Charging Party promotions because of his race.[23]

Subsequently, in March 2002, Levias received the worst performance evaluation he had ever received during his twenty years at TDCJ, signed by both Albright and McDaniel.[24] On April 19, 2002, Levias filed another charge of discrimination with the EEOC, asserting that he had been retaliated against for his filing the first EEOC complaint when (1) Albright, in the fall of 2001, had given him "an impossible set of work circumstances, setting [him] up for failure and poor performance"; and (2) he was denied the Assistant Plant Manager position in favor of McDaniel in February 2002.[25] Both parties have extensively briefed the summary judgment issue.

## II. SUMMARY JUDGMENT STANDARD

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge*

*No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254, 106 S.Ct. 2505. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505.

 All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the burden of proof has shifted to the non-movant, he "must do more that simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

---

**23.** *Id.* at Ex. 26.

**24.** *Plaintiff's Complaint* (Doc. 1) ¶ 54.

**25.** *Id.* at Ex. 27.

verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249–50, 106 S.Ct. 2505. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir.1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir.1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

## III. FAILURE TO PROMOTE CLAIMS

The record in this case demonstrates that genuine issues of material fact exist with respect to the following claims: (1) Plaintiff's claim that Defendant unlawfully failed to promote him when Ticknor, and not Plaintiff, was hired as Assistant Plant Manager of the Wynne Box Factory in November 2000; (2) Plaintiff's claim that Defendant unlawfully failed to promote him when McDaniel, and not Plaintiff, was hired for Assistant Plant Manager in February 2002; and (3) Plaintiff's claim that Defendant unlawfully retaliated against him for filing the EEOC charge in June 2001 when McDaniel, and not Plaintiff, was hired to fill the Assistant Plant Manager position upon Ticknor's retirement.[26] The Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's failure to promote claim regarding Albright's appointment to the position of Plant Manager of the Wynne Box Factory in April 2001.

### A. Elements of a Prima Facie Case of Race Discrimination

To establish a prima facie case of race discrimination based on a failure to promote a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was not promoted; and (4) either the position was filled by someone not in the protected class, or the person was not promoted because of his race.[27] There is no dispute that Levias, an African American, is a member of a protected class, and that in each instance Levias was not promoted and that instead the position in question was filled by someone not in the protected class. As to whether Levias was

---

**26.** Plaintiff's retaliation claim is discussed *infra* in Part IV.

**27.** *Pratt v. City of Houston*, 247 F.3d 601, 606 n. 2 (5th Cir.2001); *Oden v. Oktibbeha County*, 246 F.3d 458, 468 (5th Cir.2001).

qualified for the positions sought, the Court begins with whether Levias in fact actually *sought* those positions. There is no dispute that Levias actually applied for the Assistant Plant Manager position in January 2002. Furthermore, the Court finds that the record indisputably demonstrates that, for purposes of establishing his prima facie case, Levias had adequately sought that same position at the time Ticknor was appointed to it in November 2000. There is no dispute that D'Cunha, the alleged decision maker, (1) was aware that Levias had previously sought the position, (2) was aware that Levias still wanted the position, and (3) was aware that Irving, the Box Factory Manager, thought Levias should be promoted to the position.[28] Furthermore, Defendant's general suggestion that its "refusal to consider whether [Levias] deserved a promotion does not constitute an *actionable* ultimate employment decision under Title VII" [29] flies in the face of reason and of the very cases it relies on for that proposition,[30] and has no sound basis in law.[31]

The Court finds, however, that Levias has not adequately established that he sought the Plant Manager position in April 2001. While there is no dispute that TDCJ had notice of Levias's desire for a promotion to the position of Assistant Plant Manager in November 2000 and January 2002, Levias has not directed the

Court to any evidence to support a finding that Benestante, whom Plaintiff does not contest was the relevant decision maker with respect to the Albright appointment, was aware that Levias wanted to be the Plant Manager of the Wynne Box Factory. Indeed, although he has now changed his position,[32] Levias originally "[did] not dispute John Benestante's assertion that he did not know Plaintiff or Plaintiff's race prior to May or June of 2001," at least one month *after* Albright had been appointed. Although Plaintiff now maintains that Benestante has known him since 1995, Plaintiff still has not come forward with adequate evidence to suggest that Benestante was aware of his desire to be Plant Manager and somehow took that desire into consideration when he appointed Albright. Indeed, Levias has not demonstrated that Benestante even considered the Box Factory Manager position to be "open" in April 2001, since there is no dispute that Benestante moved Irving, the Manager prior to Albright, to the QAR division of TCI and moved Albright from that same division into the Manager position.

Finally, TDCJ does not dispute that Levias was qualified for the position of Assistant Plant Manager. In short, therefore, the Court finds that Levias has established a prima facie case of race discrimination with respect to TDCJ's failure to promote him to the position of Assistant Plant Man-

**28.** *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at p. 18. See, e.g., *Oden v. Oktibbeha County,* 246 F.3d 458 (5th Cir.2001).

**29.** *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 14.

**30.** *Banks v. E. Baton Rouge Parish Sch. Bd.,* 320 F.3d 570, 575 (5th Cir.2003) ("Only 'ultimate employment decisions such as hiring, granting leave, discharging, *promoting,* and compensating' satisfy the adverse employment action element.") (citing *Dollis v. Rubin,*

77 F.3d 777, 781–82 (5th Cir.1995)) (emphasis added).

**31.** See *Bryant v. Aiken Regional Medical Centers, Inc.,* 333 F.3d 536, 544 (4th Cir.2003) ("It is similarly beyond quarrel that Bryant suffered an adverse employment action. It has long been clear that failure to promote an employee constitutes an adverse employment action . . . .").

**32.** As discussed below, the Court will allow Levias to proceed with this position and will not strike his latest affidavit, submitted to the Court on March 9, 2004.

ager in November 2000 and January 2002. TDCJ is entitled to summary judgment with respect to Albright's appointment as Plant Manager in April 2001.

### B. Further Showings

TDCJ contends that, even if Levias can establish a *prima facie* case of disparate treatment, he cannot ultimately prove that race discrimination was the reason for his failure to be promoted to the position of Assistant Plant Manager. TDCJ argues that it has advanced legitimate, non-discriminatory reasons for its employment actions toward Levias, and that he has not shown that these reasons are a pretext for race discrimination. Levias argues that he can show that TDCJ's proffered reasons are a pretext for discrimination, and, indeed, that he has "direct evidence" of discrimination. The Court finds that Levias's purported "direct" evidence, D'Cunha's statement to Spikes regarding making sure that the "best candidate" got the job,[33] does not constitute direct evidence

under Fifth Circuit law.[34] Levias, however, also argues that, even if he cannot point to "direct evidence," and his circumstantial evidence fails to demonstrate "pretext," he would still be entitled to relief under *Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), and 42 U.S.C. § 2000e–2(m). Levias essentially argues that *Desert Palace* modifies the final stage of the *McDonnell Douglas* burden-shifting paradigm for circumstantial evidence cases, because the Supreme Court held in *Desert Palace* that direct evidence is not required to entitle a plaintiff to a "mixed-motive" instruction. Therefore, Levias contends that if a plaintiff fails to prove that the employer's reasons for its conduct are pretextual, but nevertheless proves that discrimination was "a motivating factor" for the employer's conduct, his claim survives, and the burden then shifts to the employer to prove that it would have taken the same actions even without consideration of protected characteristics of the plaintiff. Several courts have so interpreted *Desert Palace.*[35]

---

33. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 10.

34. See *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir.2003) (direct evidence must prove the fact in question "without inference or presumption," and includes any "statement or document which shows *on its face* that an improper criterion served as a basis ... for the adverse employment action.") (emphasis added).

35. *Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987 (D.Minn.2003) (Magnuson, J.); *Griffith v. City of Des Moines,* 2003 WL 21976027, *12 (S.D.Iowa Jul 03, 2003) (Longstaff, C.J.) (adopting the analysis in *Dare*); *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180 (N.D.Iowa 2003) (Bennett, C.J.); *Rishel v. Nationwide Mut. Ins. Co.,* 297 F.Supp.2d 854 (M.D.N.C.2003) (Beaty, J.) (explicitly adopting analysis set forth in *Dunbar*); *Disher v. Weaver,* 308 F.Supp.2d 614, 629 (M.D.N.C.2004) (Osteen, J.) (following *Dunbar*); *Walker v. Northwest Airlines, Inc.,* 2004 WL 114977 (D.Minn. Jan.12, 2004)

(Davis, J.) (adopting *Dunbar*); *Torlowei v. Target,* 2004 WL 229081, *4 (D.Minn. Feb 03, 2004) (Davis, J.) (following *Dunbar*); *Brown v. Westaff (USA), Inc.,* 301 F.Supp.2d 1011, 1016 (D.Minn.2004) (Tunheim, J.) (following *Dunbar*); *Carlsen v. Green Thumb, Inc.,* 2004 WL 234406, *7 (D.Minn. Feb 04, 2004) (Tunheim, J.) (citing *Dunbar* with approval); *Ordahl v. Forward Technology Industries, Inc.,* 301 F.Supp.2d 1022, 1027 (D.Minn.2004) (Tunheim, J.) (following *Dunbar*); *Vogan v. U.S. Oncology, Inc.,* 301 F.Supp.2d 1038, 1042–43 (W.D.Mo.2003) (Laughrey, J.) (noting that "this Court seriously questions the continued viability of the *McDonnell Douglas* burden-shifting paradigm" and citing *Dunbar* with approval; *see also Lloyd v. City of Bethlehem,* 2004 WL 540452 at *5 (E.D.Pa.) (Gardner, J.) (stating, in age discrimination case, "we find persuasive the comprehensive analysis and reasoning of the district court in *Dunbar.* Thus, we apply the modified *McDonnell Douglas* test enunciated in *Dunbar* to the facts of the within matter"); *Louis v. East Baton Rouge Parish School Board,* 2003 WL 23281538 at *3 (M.D.La.) (Polozola, C.J.)

### 1. *Desert Palace v. Costa* and Its Impact

#### a. The Supreme Court's Decision

■ This court's analysis of what further showings Levias may be required to make to defeat TDCJ's motion for summary judgment thus begins with consideration of the Supreme Court's decision in *Desert Palace.* In *Desert Palace,* the Court noted that "[t]his case provides us with the first opportunity to consider the effects of the 1991 Act [amending Title VII] on jury instructions in mixed-motive cases." [36] The amendment in question stated that, "[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." [37] The Court explained the issue presented by the amendment as follows:

> Since the passage of the 1991 Act, the Courts of Appeals have divided over whether a plaintiff must prove by direct evidence that an impermissible consider-

ation was a "motivating factor" in an adverse employment action. See 42 U.S.C. § 2000e–2(m). Relying primarily on Justice O'Connor's concurrence in *Price Waterhouse [v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)], a number of courts have held that direct evidence is required to establish liability under § 2000e–2(m). *See, e.g., Mohr v. Dustrol, Inc.,* 306 F.3d 636, 640–641 (8th Cir.2002); *Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572, 580 (1st Cir.1999); *Trotter v. Board of Trustees of Univ. of Ala.,* 91 F.3d 1449, 1453–1454 (11th Cir.1996); *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir. 1995). In the decision below, however, the Ninth Circuit concluded otherwise. *See infra,* at 2153. [38]

The Fifth Circuit had likewise adopted Justice O'Connor's analysis in *Price Waterhouse* and had held that "the fundamental prerequisite to the mixed-motives instruction is the presentation of *direct evidence* of discrimination." [39] The unanimous *Desert Palace* Court, however, held that "direct evidence" is *not* required in order for a plaintiff to obtain a mixed-motive instruction under Title VII. [40]

(noting that, in light of *Desert Palace,* "it is now harder to draw a distinction between *McDonnell Douglas* and mixed-motive cases."); *Lopez v. Micro Center Sales Corp.,* 2003 WL 22706957 at *3 n. 6 (N.D.Ill. Nov.17, 2003) (Shadur, J.) (citing *Dare* and noting that "It would seem that the *McDonnell Douglas* formulation may have limited future utility, given the Supreme Court's recent decision that a Title VII mixed motive case may be proved through indirect or circumstantial evidence alone."); *Lambert v. Potter,* 2004 WL 229080 (D.Minn. Feb.02, 2004) (Davis, J.) (citing *Costa* and concluding that "The Supreme Court has relieved plaintiffs from proving that the employer's proffered reason for the adverse employment action was a pretext for discrimination.").

**36.** *Desert Palace,* 123 S.Ct. at 2153.

**37.** 42 U.S.C. § 2000e–2(m).

**38.** *Desert Palace,* 123 S.Ct. at 2151–52.

**39.** *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (emphasis in original); see also *Haas v. ADVO Systems, Inc.,* 168 F.3d 732, 733 (5th Cir.1999) ("Because we do not construe Haas's evidence to constitute 'direct evidence' of discrimination, however, we do not reach the issue of ADVO's mixed-motives defense") (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 241–46, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)); *Louis v. East Baton Rouge Parish School Board,* 303 F.Supp.2d 799, 802 (M.D.La.); *Texas v. Crest Asset Management, Inc.,* 85 F.Supp.2d 722, 729–30 (S.D.Tex.2000) ("If the plaintiff produces direct evidence of discrimination, the United States Supreme Court's *Price Waterhouse* mixed-motives theory of discrimination comes into play.").

**40.** *Id.* at 2150, 2155.

The Court found four bases for its conclusion that § 2000e–2(m) does not require direct evidence of discrimination: (1) the unambiguous language of the statute—that a plaintiff need only "demonstrat[e]" that an employer used a forbidden consideration with respect to "any employment practice"—which the Court concluded "[o]n its face ... does not mention, much less require, that a plaintiff make a heightened showing through direct evidence"; (2) Congress's explicit definition of "demonstrates" in § 2000e(m) as "to 'mee[t] the burdens of production and persuasion,'" which did not include any "direct evidence" requirement; (3) the "conventional rule," applicable in Title VII cases, that a plaintiff must prove his or her case "by a preponderance of the evidence" using "direct or circumstantial evidence"; and (4) the use of the term "demonstrates" in other provisions of Title VII, which "tends to show further that § 2000e–2(m) does not incorporate a direct evidence requirement," because "[a]bsent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue." [41] The Court summarized its holding as follows:

> In order to obtain an instruction under § 2000e–2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Because direct evidence of discrimination is not required in mixed-motive cases, the Court of Appeals correctly concluded that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury. [42]

Although this holding only purported to address when a plaintiff is entitled to a mixed-motive instruction, [43] some lower courts have concluded that the holding has a much broader impact. Specifically, some courts have read *Desert Palace* to apply to "single-motive" cases as well as "mixed-motive" cases, and thus have concluded that "*Desert Palace* and § 2000e–2(m) spell the demise of the 'false dichotomy' between the *McDonnell Douglas* framework, which applied where a plaintiff's claim was primarily supported by circumstantial evidence, and the *Price Waterhouse* framework, which applied where a plaintiff presented direct evidence of discrimination." [44] As discussed in more detail below, this Court agrees that there is no longer any use for a "dichotomy" between those two analytical frameworks.

#### b. Analysis of *Desert Palace*

This court is hopeful that the full import of the Supreme Court's decision in *Desert Palace* and § 2000e–2(m) will become clearer as more courts grapple with the issue or the Supreme Court has the opportunity to elaborate and build upon its opinion. For the moment, however, this Court must make its best attempt to determine what the implications of *Desert Palace* and § 2000e–2(m) are for this case. To that

---

41. *Id.* at 2153–55.

42. *Id.* at 2155.

43. *Id.* at 2151 n. 1 ("This case does not require us to decide when, if ever, § 107 applies outside of the mixed-motive context.").

44. *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180, 1196 (N.D.Iowa 2003); see also *Rishel v. Nationwide Mut. Ins. Co.,* 297 F.Supp.2d 854 (M.D.N.C.2003) (adopting analysis set forth in *Dunbar*); *Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987, 991 (D.Minn.2003) (concluding that, in light of *Desert Palace,* "The dichotomy produced by the *McDonnell Douglas* framework is a false one.").

end, this Court offers the following observations.[45]

■ As the Supreme Court noted in *Desert Palace,* "Since 1964, Title VII has made it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , *because of* such individual's race, color, religion, sex, or national origin.' " [46] Moreover, in 1991, Congress amended Title VII to make clear that, "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, *even though other factors also motivated the practice.*" [47] Thus, this court believes that Congress has made plain that an employment practice "because of" a protected characteristic means that the protected characteristic was "a motivating factor" for that employment practice, *not* that it was the *sole* motivating factor.

■ As noted above, the Supreme Court has made clear in *Desert Palace* that demonstration of "a motivating factor" does not require "direct evidence"; rather, circumstantial evidence will suffice.[48] Specifically, the *Desert Palace* Court held that "[i]n order to obtain an instruction under § 2000e–2(m), a plaintiff need only present sufficient evidence for *a reasonable jury to conclude,* by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.' " [49] This "reasonable jury" standard is precisely the same as the standard for defeating a motion for summary judgment—*i.e.,* whether the plaintiff has presented evidence "such that a reasonable jury could return a verdict for the nonmoving party." [50] Thus, it follows from *Desert Palace* and § 2000e–2(m) that the relevant question on summary judgment is *not* whether the case is a "single-motive" case or "mixed-motive" case, or even whether the case involves "direct" or "circumstantial" evidence, but instead is the following: whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was at least a motivating factor in the defendant's adverse employment action against the plaintiff.[51]

---

**45.** Of all the authorities interpreting *Desert Palace* this Court is most in agreement with Judge Bennett's thoughtful and comprehensive opinion in *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180 (N.D.Iowa 2003). Much of what follows was taken directly from *Dunbar.* The Court also notes the persuasiveness of *Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987 (D.Minn. 2003), the first district court opinion to actually apply *Desert Palace* to a Title VII case.

**46.** *Desert Palace,* 123 S.Ct. at 2150 (quoting 42 U.S.C. § 2000e–2(a)(1), with emphasis added by the Court).

**47.** 42 U.S.C. § 2000e–2(m) (emphasis added); *see also Desert Palace,* 123 S.Ct. at 2151 (quoting the statute).

**48.** *Desert Palace,* 123 S.Ct. at 2153–55.

**49.** *Id.* at 2155 (quoting 42 U.S.C. § 2000e–2(m)) (emphasis added).

**50.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**51.** See *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 2004 WL 439876 at *13–14 (9th Cir.2004) (opining that *Desert Palace* brings clarity to prior case law on proper analytical framework for disparate treatment claims, which the Court described as "a quagmire that defies characterization", and concluding that "McGinest may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated GTE . . . . Under either approach, McGinest must produce some evidence suggesting that GTE's failure to promote him was due in part or whole to discriminatory intent").

This Court agrees that *Desert Palace* and § 2000e–2(m) spell the demise of the "false dichotomy" between the *McDonnell Douglas* framework, which applied where a plaintiff's claim was primarily supported by circumstantial evidence, and the *Price Waterhouse* framework, which applied where a plaintiff presented direct evidence of discrimination. This court also believes that *Desert Palace* and § 2000e–2(m) spell the demise of the *Price Waterhouse* framework altogether, with the analysis of *every* discrimination case now collapsing into the simpler question of whether the plaintiff has presented sufficient evidence, direct or circumstantial, for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." [52] However, this Court does *not* believe that *Desert Palace* and § 2000e–2(m) necessarily spell the demise of the entire *McDonnell Douglas* burden-shifting paradigm.

■■■ In this Court's view the flaw, if any, was not in the *McDonnell Douglas* burden-shifting paradigm itself, but in the now discredited assumption of the lower courts that, in the absence of "direct evidence" of discrimination, there could be no

"mixed-motive" case. [53] From that flawed assumption flowed the characterization of the final stage of the *McDonnell Douglas* burden-shifting paradigm, when only circumstantial evidence was available, in terms of only two alternatives: either the defendant's proffered explanation for its conduct was true, resulting in victory for the defendant, or the defendant's proffered explanation was a false pretext for discrimination, resulting in victory for the plaintiff. However, even before *Desert Palace*, the Supreme Court made clear that after the defendant offers a legitimate reason for its conduct "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination *vel non*." [54] Thus, in light of *Desert Palace* and § 2000e–2(m), this Court concludes that once the *McDonnell Douglas* framework "disappears," because the defendant proffers a legitimate reason for its conduct, there are now more than two possibilities. Specifically, if the defendant's proffered reason is *true*, there are three possible scenarios, which might be described as the "mixed motive" scenarios:

(1) The defendant's proffered reason is **true**, *and* it is the only reason (or, at least, the only reason supported by the

---

**52.** 42 U.S.C. § 2000e–2(m).

**53.** See, e.g., *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (emphasis in original); see also *Haas v. ADVO Systems, Inc.*, 168 F.3d 732, 733 (5th Cir.1999) ("Because we do not construe Haas's evidence to constitute 'direct evidence' of discrimination, however, we do not reach the issue of ADVO's mixed-motives defense") (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241–46, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)); *Louis v. East Baton Rouge Parish School Board*, 2003 WL 23281538 at *2 (M.D.La.); *Texas v. Crest Asset Management, Inc.*, 85 F.Supp.2d 722, 729–30 (S.D.Tex.2000) ("If the plaintiff produces direct evidence of discrimination, the United States Supreme Court's *Price Waterhouse*

mixed-motives theory of discrimination comes into play.").

**54.** *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations and quotation marks omitted); *see also id.* at 143, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (explaining that, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' ") (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

record). No "mixed motive" is shown, and *the defendant wins.*

(2) The defendant's reason is **true**, there are *other* reasons supported by the record, *but* the plaintiff nevertheless fails to prove by the preponderance of the evidence (or to generate a genuine issue of material fact) that another "motivating factor" for the defendant's conduct was the employee's protected characteristic. No adequate "mixed motive" showing has been made, and *the defendant wins.*

(3) The defendant's reason is **true**, there are *other* reasons supported by the record, *and* the plaintiff proves by the preponderance of the evidence (or generates a genuine issue of material fact) that another "motivating factor" for the defendant's conduct was the employee's protected characteristic. An adequate "mixed motive" showing has been made, and *the plaintiff wins* (or at least defeats the defendant's motion for summary judgment).

Similarly, if the defendant's proffered reason is *false*, the plaintiff must still make a showing that the plaintiff's protected characteristic is the "real reason," *i.e.*, a showing of "pretext," with the following possible scenarios:

(1) The defendant's proffered reason is **false**, *but* no other reason is supported by the record (which implies that the "real reason" was the employer's right to fire an at-will employee for no reason). "Pretext" has not been shown, and *the defendant wins.*

(2) The defendant's proffered reason is **false**, there are *other* reasons supported by the record, *but* the plaintiff nevertheless fails to prove by the preponderance

of the evidence (or to generate a genuine issue of material fact) that his or her protected characteristic was the real reason. "Pretext" has not been shown, and *the defendant wins.*

(3) The defendant's proffered reason is **false**, there are *other* reasons supported by the record, *and* the plaintiff proves by the preponderance of the evidence (or generates a genuine issue of material fact) that his or her protected characteristic was the real reason. An adequate showing of "pretext" has been made, and *the plaintiff wins* (or at least defeats the defendant's motion for summary judgment).

Only two of these possible scenarios result in victory for the plaintiff, or at least, allow a plaintiff to defeat a defendant's motion for summary judgment, because in only those two scenarios has the plaintiff made an adequate showing on his or her ultimate burden to prove intentional discrimination.

 Thus, the *McDonnell Douglas* burden-shifting paradigm must only be *modified* in light of *Desert Palace* and § 2000e–2(m), and *only in its final stage,* so that it is framed in terms of whether the plaintiff can meet his or her "ultimate burden" to prove intentional discrimination, rather than in terms of whether the plaintiff can prove "pretext." [55] Under such a modified framework, to prevail after the defendant produces a legitimate, nondiscriminatory reason for its conduct, the plaintiff must prove by the preponderance of the evidence either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); [56] or (2) that the defendant's

**55.** *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180, 1197 (N.D.Iowa 2003); see also See *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 2004 WL 439876 at *13–14 (9th Cir.2004); *Rishel v. Nationwide Mut. Ins. Co.,* 297 F.Supp.2d 854

(M.D.N.C.2003) (adopting analysis set forth in *Dunbar*); *Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987 (D.Minn.2003).

**56.** *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

reason, while true, is only *one* of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).[57] The latter showing may be made with either "direct" or "circumstantial" evidence.[58] If the plaintiff prevails under the *second* alternative, then if the defendant is to limit the remedies available to the plaintiff to injunctive relief, attorney's fees, and costs—*i.e.*, to escape liability for damages—the burden shifts back to the defendant to prove the affirmative defense stated in § 2000e–5(g)(2)(B), which is that the defendant "would have taken the same action in the absence of the impermissible motivating factor." [59]

## 2. Application of the Modified Paradigm

### a. TDCJ's legitimate, nondiscriminatory reasons

▮ The Court concludes that TDCJ has met its second-stage burden to "produc[e] evidence that the plaintiff was [not promoted] for a legitimate, nondiscriminatory reason." [60] Not only is the court not allowed to make credibility or "truth" determinations on a motion for summary judgment, but the burden on the defendant at the second stage of the *McDonnell Douglas* burden-shifting paradigm "is one of production, not persuasion; it 'can involve no credibility assessment.' " [61] Here, TDCJ has produced evidence that it "administratively reassigned" Ticknor in an effort to "find new areas of responsibility for employees which will better fit their talent and experience." [62] Furthermore, TDCJ has produced evidence that it decided to hire McDaniel and not Levias because "Henry Spikes, an African American male .... was impressed with Jim McDaniel's interview, but was not impressed with Plaintiff's interview." [63] Thus, the question is whether Levias can satisfy—or at least generate genuine issues of material fact on—the modified third stage of the *McDonnell Douglas* analysis.

### b. Levias's showing of "intentional discrimination"

In shorthand terms, the burden placed upon Levias at the modified third stage of the burden-shifting analysis is whether he has presented evidence, direct or circum-

---

**57.** 42 U.S.C. § 2000e–2(m).

**58.** *Desert Palace*, 123 S.Ct. at 2155.

**59.** 42 U.S.C. § 2000e–5(g)(2)(B). The Court notes that, if *Desert Palace* means what this Court reads it to mean, it is not clear what case that gets past summary judgment would *not* be governed by § 2000e–2(m), and the related "same decision" affirmative defense in § 2000e–5(g)(2)(B). More specifically, it is unclear to the Court when, if ever, a case in which the plaintiff had generated genuine issues of material fact necessary to defeat summary judgment, notwithstanding the defendant's production of evidence of a legitimate, nondiscriminatory reason for its action, would *not* involve a jury question on whether the case involved both legitimate and illegitimate reasons for the employer's decision. Whether the plaintiff's evidence was that the employer's proffered reason was false and

pretextual, or that the employer's reason, while true, was not the only reason, and another "motivating factor" was a protected characteristic of the plaintiff, the jury would be presented with evidence supporting *both* the employer's proffered legitimate reason, and the plaintiff's asserted illegitimate reason. The Court thus respectfully disagrees with the characterization of a case like *Winter v. Bank of America, N.A.*, 2003 WL 23200278 (N.D.Tex.), as simply a "pretext" case.

**60.** *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097.

**61.** *Id.*

**62.** *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 16.

**63.** *Defendant's Reply to Plaintiff's Response* (Doc. 47) at 16–17.

stantial, from which a reasonable jury could logically infer that a protected characteristic was at least a motivating factor in TDCJ's adverse employment actions against him. As explained above, that inquiry involves two alternatives: either (1) TDCJ's proffered reasons are not true, but are instead a pretext for race discrimination (pretext alternative);[64] or (2) TDCJ's reasons, while true, are not the *only* reasons for its conduct, and another "motivating factor" was Levias's race (mixed-motive alternative).[65]

### i. Pretext Alternative

■ As the Supreme Court explained in *Reeves*, a showing that the employer's proffered reason is not "the real reason" is not enough.[66] Rather, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." [67] The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the

trier of fact to conclude that the employer unlawfully discriminated." [68] Thus, a plaintiff must show, or at least generate a genuine issue of material fact, that the defendant's justification for its conduct is "unworthy of credence." [69]

■ The Court concludes that Levias's evidence is sufficient to generate the necessary genuine issues of material fact to defeat TDCJ's motion for summary judgment on the remaining failure to promote claims. Levias proffered evidence that Ticknor, in his position as Assistant Plant Manager of the Signs Factory, had mismanaged the facility. In D'Cunha's words, "It was pretty chaotic. It was mismanaged." [70] Furthermore, the record demonstrates that, unlike with the appointment of Albright, by "administratively reassigning" Ticknor to work as Assistant Plant Manager of the Box Factory, Benestante and D'Cunha created a vacancy in the Sign Factory that needed to be filled by promoting another employee in that factory.[71] Finally, the Court finds that the EEOC determination in this case is highly probative on the issue of whether the need to "administratively reassign" Ticknor was pretextual.[72] TDCJ's objections to the introduction of the EEOC determination as evidence in this case are overruled.[73] Any

---

64. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

65. 42 U.S.C. § 2000e–2(m).

66. *Reeves*, 530 U.S. at 153, 120 S.Ct. 2097.

67. *Id.* (quoting the district court's jury instructions as properly stating the law).

68. *Id.* at 148, 120 S.Ct. 2097.

69. *Id* at 143, 120 S.Ct. 2097.

70. *Defendant's Motion for Summary Judgment* (Doc. 32) at p. 16.

71. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 17–18 & Ex. 26 (EEOC Determination dated 02/08/2002).

72. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 n. 13 (5th Cir.2003) ("An EEOC determination prepared by professional investigators on behalf of an impartial agency is highly probative.") (citations omitted).

73. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 894 (5th Cir.1998) ("EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of the underlying claims of employment discrimination at issue in the case."); *see also Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) ("We think, however, that to ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would

alleged inconsistencies between the EEOC findings and the evidence in this case go to the findings' weight as evidence and not to their admissibility.

As to McDaniel's appointment, the Court similarly finds that the EEOC determination is probative as to whether Spikes's and D'Cunha's belief that McDaniels was a more impressive candidate was pretextual, since although the determination discusses only Ticknor's appointment it is probative of TDCJ's attitude towards promoting African Americans.[74] Furthermore, Levias also presented evidence that D'Cunha, despite being the selecting authority for McDaniel in February 2002, had no idea whether McDaniel even met the minimum qualifications for the Assistant Plant Manager position.[75] Therefore, TDCJ is not entitled to summary judgment on Levias's purported failure to generate a genuine issue of material fact on the first, or "pretext," alternative at the third stage of the modified burden-shifting analysis.

#### ii. Mixed-motive alternative

 Because Levias's evidence is sufficient to generate a genuine issue of material fact on the falsity of TDCJ's proffered explanations, the Court finds that it necessarily also generates a genuine issue of material fact on the lesser-included question of whether race was at least "a motivating factor" in TDCJ's decision not to promote him.[76]

#### c. Conclusion

Because Levias has generated genuine issues of material fact on both alternatives for the final stage of the modified burden-shifting analysis, TDCJ's motion for summary judgment on Levias's failure to promote claims must be denied. Levias, furthermore, is entitled to a mixed-motive jury instruction on his failure to promote claims.

### IV. RETALIATION CLAIM

 Levias's final claim is that TDCJ refused to promote him, and promoted McDaniel instead, in retaliation for his filing an EEOC complaint in June 2001. In Title VII retaliation cases, the plaintiff must first make the following prima facie showing: "(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."[77] The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard.[78] The plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged deci-

---

be wasteful and unnecessary. The fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases. Its probative value, we believe, at least outweighs any possible prejudice to defendant.")

**74.** See *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817 (noting that possible methods of demonstrating pretext include the employer's "general policy and practice with respect to minority employment.").

**75.** *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 66–69.

**76.** 42 U.S.C. § 2000e–5(m) (the plaintiff prevails by showing that a protected characteristic was "a motivating factor" in the employer's conduct, "even though other factors also motivated the practice").

**77.** *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir.2002).

**78.** *Id.; Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002).

sion in order to establish the 'causal link' element of a prima facie case." [79] Assuming the plaintiff is able to establish his prima facie case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action. If the defendant satisfies this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. [80] A fact finder "may infer the ultimate fact of retaliation from the falsity of the explanation. In such cases, a plaintiff may withstand a motion for summary judgment without adducing additional, independent evidence of retaliation." [81]

█ Levias has plainly established a prima facie case of retaliation. First, there is no dispute that he engaged in activity protected by Title VII, namely filing an EEOC complaint of race discrimination. Second, there is no real dispute that an adverse employment action occurred: Levias was passed over for promotion in favor of McDaniel. Finally, although TDCJ argues that Levias has failed to demonstrate a causal link, the evidence in this record unquestionably creates a triable fact issue as to whether the failure to promote Levias was a retaliatory response to the EEOC complaint. Levias filed the EEOC complaint in June 2001, naming D'Cunha and Benestante as employers who had discriminated against him on the basis of race. There is no dispute that D'Cunha and Benestante had notice of the complaint by July 2001; that an investiga-

tion involving both men began soon thereafter; and that the alleged act of retaliation occurred in January and February 2002. There is no problem of temporal proximity in this case. Furthermore, there is no dispute that D'Cunha was the official selecting authority with respect to McDaniel's appointment, and, as noted above, Levias (1) has demonstrated that D'Cunha had no idea whether McDaniel even met the minimum qualifications for the Assistant Plant Manager position; [82] and (2) has marshaled evidence to demonstrate that D'Cunha's decision to involve Spikes in the hiring process was motivated by retaliatory desires. While Spikes may have simply been a neutral intermediary, as D'Cunha suggests, the evidence in this case also supports a finding that D'Cunha involved Spikes only to insulate himself from responsibility for purposefully passing over Levias for promotion. D'Cunha has clearly stated that Spikes, only one of four African Americans in managerial positions at the TDCJ, was asked to be involved in the interview process specifically because of the June 2001 EEOC complaint. [83] Finally, there is no dispute that D'Cunha spoke to Spikes shortly before the interview about the fact of Levias's EEOC complaint. [84] The Court finds that this evidence is sufficient to establish Levias's prima facie case.

█ In response, TDCJ asserts that its decision to hire McDaniel was based on the fact that he was a more impressive candidate for the position. In order to survive summary judgment, therefore, Levias

---

79. *Gee,* 289 F.3d at 345; *Long v. Eastfield Coll.,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (citation omitted).

80. *Gee,* 289 F.3d at 345; *Aldrup v. Caldera,* 274 F.3d 282, 286 (5th Cir.2001).

81. *Gee,* 289 F.3d at 348; *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

82. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 66–69.

83. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 10.

84. *Id.*

must demonstrate a material issue of disputed fact as to whether this proffered explanation was merely a pretext for retaliation. The Court finds that Levias has met this burden. The very involvement of Spikes, under the circumstances described above, is sufficient evidence of the falsity of the proffered explanation. Furthermore, Levias has marshaled evidence demonstrating that D'Cunha had little or no concern for McDaniel's actual qualifications for the job, and indeed was not even aware of whether McDaniel met the minimum qualifications.[85] Given this evidence, the Court finds that it must deny TDCJ's motion for summary judgment on the retaliation claim.

■ The Court notes that Levias argues that § 2000e–2(m) applies to retaliation claims, so that he need only have demonstrated that retaliation was a motivating factor in TDCJ's employment decision. The Fifth Circuit has not addressed this question.[86] Although Levias has met the more rigorous summary judgment burden of demonstrating pretext, this Court cannot avoid addressing this question because Levias has, in addition, requested a mixed motive jury instruction on his retaliation claim. This Court need not engage in a protracted analysis on this point, however, as the Court finds that the plain language of § 2000e–2(m) clearly does not encompass retaliation claims.[87] Nothing in *Desert Palace* changes that fact or holds otherwise. Accordingly, Levias will have the burden of proving that TDCJ would not have hired McDaniel instead of him in January / February 2002 *but for* its retaliatory animus in response to Levias's filing the June 2001 EEOC complaint.

## V. CONCLUSION

Thus, TDCJ's motion for summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART**. The Court finds that Levias has marshaled sufficient evidence to create genuine issues of material fact as to whether TDCJ's stated reasons for failing to promote him in November 2000 and February 2002 were pretextual and as to whether, in particular, those decisions were based on his race. Furthermore, the Court finds that Levias has marshaled sufficient evidence to create genuine issues of material fact as to whether TDCJ's failure to promote him in February 2002 was an act of retaliation for his engaging in the protected act of filing an EEOC complaint in June 2001. The Court finds, however, that TDCJ is entitled to summary judgment with respect to Levias's claim regarding Albright's appointment in April 2001.

---

85. *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 39) Ex. 5 (D'Cunha Deposition) at pp. 64–68.

86. *Rubenstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 403 (5th Cir.2000).

87. *See McNutt v. Board of Trustees of Univ. of Ill.,* 141 F.3d 706 (7th Cir.1998); *Woodson v.* Scott Paper Co., 109 F.3d 913, 932–36 (3d. Cir.), *cert. denied,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997); *Tanca v. Nordberg,* 98 F.3d 680, 682–85 (1st Cir.), *cert. denied,* 520 U.S. 1119, 117 S.Ct. 1253, 137 L.Ed.2d 333 (1997).